## GEORGE W. GRANT, Respondent, v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, Appellant.

### Springfield Court of Appeals, July 7, 1910.

1. **WATERS: Surface Water: Landowner May Guard Against: Cannot Discharge Body of Water on Neighbor's Land.** The common law rule which is in force in this State, is that surface water is a common enemy, against which each landowner may guard in his own way, and he will not be responsible for damages to his neighbor by reason of the fact that, in improving his own land, if he does it in a proper manner, surface water may be thereby turned upon his neighbor; but this general rule has its limitations, one of which is that a party cannot collect surface water upon his own premises and discharge it in a body upon the land of his neighbor to the latter's injury.

2. **RAILROADS: Waters: Drains and Drainage.** Where a railroad company constructs a ditch along its right of way for the purpose of collecting the surface water, which had previously been overflowing its tracks, and the water is discharged from said ditch, so as to overflow the land of an adjoining proprietor to his damage, the railroad company is liable for the injury.

3. **DAMAGES: Waters: Injury to Business: Loss of Profits: Railroads: Instructions.** Where a railroad company collects surface water by means of a ditch along its right of way, and the water is discharged in a body upon plaintiff's land on which the plaintiff had been operating a tile manufacturing plant, and the overflow necessitated the shutting down of said plant for several months, the measure of damages is held to be the loss of profits for the period of the interruption, together with any expense necessarily incurred, which the business would have paid but for the interruption, and also the expense necessary to repair the damage to the plant caused by the overflow, and an instruction given in this case which permitted a recovery for the fair market value of the tiling, which could and would have been manufactured during the period the plant was necessarily shut down is held erroneous.

4. ———: **Measure of Damages: General Rule.** When one party wrongfully inflicts injury upon another, the measure of damages should be so gauged as to compensate as nearly as possible

the party injured for the loss actually suffered, and in a given case, the inquiry of damages should be so directed as to ascertain as nearly as possible what in that case was the loss suffered by reason of the wrongful act complained of and the recovery should be limited to that amount.

5. ———: **Duty to Minimize Damages: Nuisances.** It is the duty of every person to prevent a nuisance, and the fact that the person injured could, but does not, prevent damage to his property therefrom, is no defense either to an action at law or in equity.

6. ———: ———: **Railroads: Water.** Where a railroad constructs a ditch along its right of way so that the surface water is collected and discharged in a body on the property of an adjoining landowner to his damage, it is no defense to show that the landowner might have constructed a ditch along his land and prevented the overflow.

7. **RAILROADS: Drains and Drainage: Damage to Landowner.** The purpose of section 1110, Revised Statutes 1899, was to require the railroad company to construct its road and drain it so as to prevent injury to the landowner, and it can not be used as authority for the company to construct a ditch along its right of way and discharge the water in a body on the land of another.

Appeal from Stoddard Circuit Court.—*Hon. J. L. Fort,* Judge.

REVERSED AND REMANDED.

*James F. Green* for appellant.

(1) The water which was carried through the ditch being surface water, defendant was not liable for diverting the same, unless such diversion was done in a reckless or unskillful manner. Thompson v. Railroad, 137 Mo. App. 62; Mehonray v. Foaster, 132 Mo. App. 229; Beauchamp v. Taylor, 132 Mo. App. 92; Johnson v. Railroad, 111 Mo. App. 378; Abbott v. Railroad, 83 Mo. 280; Jones v. Railroad, 18 Mo. App. 251; Schneider v. Railroad, 30 Mo. App. 620; Benson v. Railroad, 78 Mo. 513; McCormick v. Railroad, 57 Mo. 437; Webb v. Carter, 121 Mo. App. 154. (2) There being no evidence

as to the unskillful construction of the ditch dug by. defendant, and the water which accumulated therein being surface water, plaintiff was not entitled to recover. Hosher v. Railroad, 60 Mo. 333; Gray v. Schreiber, 58 Mo. App. 177. (3) Plaintiff's instruction on the measure of damages was erroneous. Graves v. Railroad, 69 Mo. App. 579. (4) The court erred in refusing to give defendant's instruction No. 6. It was plaintiff's duty to minimize the damages, if possible. Drew v. Railroad, 129 Mo. App. 465; Field on Damages, 19; Dietrich v. Railroad, 89 Mo. App. 36; Logan v. Railroad, 96 Mo. App. 461.

*Cook & Cook* and *G. W. Munger* for respondent.

(1) The act itself of casting the surface water in a body, on respondent's premises, gave the latter his cause of action. Central, etc. v. Windham, 126 Ala. 552; Jutt v. Hughes, 67 N. Y. 267; Mairs v. Assoc., 89 N. Y. 498. (2) The appellant was in the wrong when it collected the water in a body and discharged it at one point on respondent's premises. Boute v. Postal, 109 Ky. 64; Paddock v. Somes, 102 Mo. 226; Noonan v. Albany, 79 N. Y. 478; Austin v. Anderson, 85 Tex. 88. (3) It is no defense to an action for wrongfully discharging surface water on plaintiff's land, that the plaintiff might, by taking steps to protect his land, have avoided or prevented the damage. Benson v. Railroad, 78 Mo. 504; McCormick v. Railroad, 70 Mo. 359; Rychlicki v. St. Louis, 98 Mo. 497; Martin v. Benoist, 20 Mo. App. 262; Ready v. Railroad, 98 Mo. 467; Hoester v. Hemsath, 16 Mo. App. 485; 30 Am. and Eng. Ency. Law (2 Ed.), 335, 338.

COX, J.—Action for damages caused by defendant digging a ditch along its right of way, collecting water therein and discharging it in a body upon the premises of plaintiff. Trial by jury, verdict for plaintiff for two

thousand dollars and defendant has appealed. The errors relied upon are the refusal of the court to sustain a demurrer to plaintiff's testimony, and alleged error in the instructions given on the part of plaintiff, and in the refusal of instructions asked by defendant.

The evidence shows that in June, 1906, plaintiff purchased land adjoining and on the north side of the right of way of defendant and sought to operate a tile factory thereon, using clay procured from this land for the purpose of manufacturing tile. That the general drainage of the land was toward the north and west; that there was a trestle or bridge in defendant's road opposite the property of plaintiff through which a little water came. Just west of the ground of plaintiff there had been an opening under the grade of the railroad for the purpose of letting surface water through and the water which passed through this opening was the surface water collected upon a large tract of land. This opening had become partially filled and at times the track of defendant had overflowed at this point, but had not overflowed opposite plaintiff's land. To remedy this condition defendant constructed a ditch upon the south side of its track from the point where this partially filled opening was to the trestle which was opposite plaintiff's land, and turned the water which accumulated upon that side of the road under their track and on to plaintiff's land. As a result of this, plaintiff's ground was overflowed, sediment was deposited upon it and his clay pits partially filled with this sediment and he was unable to operate his factory during the months of April, May and June, 1907, and part of the time in July and up to August 21st of that year. The evidence on the part of plaintiff showed the capacity of the plant for manufacturing tile; that he had ready market for all he could manufacture, and the price at which it could be sold.

The first contention of appellant is that a demurrer to plaintiff's testimony should have been sustained for

the reason that the evidence shows that all of the water discharged upon plaintiff's land by the ditch constructed by defendant was surface water, and that being true defendant could not be made liable.

The common law rule which is in force in this State is that surface water is a common enemy against which each landowner may guard in his own way, and he will not be responsible for damages to his neighbor by reason of the fact that, in improving his own land, if he does it in a proper manner, surface water may thereby be turned upon his neighbor; but this general rule has its limitations, one of which is that a party cannot collect surface water upon his own premises and discharge it in a body upon the land of his neighbor to his injury. [Paddock v. Somes, 102 Mo. 226, 14 S. W. 746; Ready v. Mo. Pac. Ry. Co., 98 Mo. App. 467, 73 S. W. 142; Lewis v. City of Springfield, 125 S. W. 824.] In this case the construction of this ditch and the accumulation of water thereby was not a mere incident to the improvement of defendant's property so as to bring it within the rule in Drew v. The Railroad, 129 Mo. App. 465, 107 S. W. 478, and Thompson v. Railroad, 136 Mo. App. 404, 117 S. W. 1193, and other like cases; but this ditch was constructed for the express purpose of collecting the water which had previously been overflowing defendant's track and conveying it to a point where it could be let through under the track without constructing a new opening for that purpose. This brings this case clearly within the rule announced in Paddock v. Somes, supra, and other cases of like character. It follows that the demurrer to plaintiff's testimony was properly overruled.

The instruction given on behalf of plaintiff of which complaint is made, submitted to the jury the question as to whether defendant had collected surface water in a large body and discharged it upon plaintiff's premises to his injury, and further instructed them that if plaintiff had a ready market for all the tiling which

he could have made had he been permitted to operate his plant, then if they found for plaintiff his damages should be assessed at such sum as they should believe from the evidence would be equal to the fair market value of the tiling which plaintiff and his employees could and would have manufactured while said plant could not be used in the manufacture of tiling on account of the surface water.

It is contended that this instruction was wrong as to the measure of damages. When one party wrongfully inflicts injury upon another the measure of damages should be so gauged as to compensate as nearly as possible the party injured for the loss actually suffered, and in a given case, the inquiry of damages should be so directed as to ascertain as nearly as possible what in that case was the loss suffered by reason of the wrongful act complained of and the recovery should be limited to that amount. When the operation of an established business has been interrupted the measure of damages is, usually, the loss of profits that would have accrued had there been no interruption of the business. This is the correct measure of damages provided the expenses stop while the business is stopped; but if the situation of the party injured is such that his expenses continue while the business is stopped then the party should recover this expense in addition to the loss of profits, for if the business is paying a profit then the business while going pays the expenses, but when the business is stopped, the party not only loses the usual profits of the business, but must take money from his pocket and pay the expenses which the business would have paid had it not been interrupted. [Morrow v. Railroad, 123 S. W. 1034; Viernow v. City of Carthage, 139 Mo. App. 276.]

In this case the plaintiff alleged in his petition the loss of profits, and further alleged special damages by reason of being put to great expense in removing the

debris and sediment washed upon his land by the water. If this business was interrupted and his plant required to remain idle, the first inquiry ought to be to ascertain what profits he lost during the time that his plant was idle. This, of course, could be shown by showing the ordinary capacity of his mill, the market for his product, the expense of manufacturing the tile which would include, of course, labor employed, consumption of clay, fuel used in burning it, and any other items of actual expense. Then after having determined the profit of which plaintiff had been deprived, the next inquiry would be to ascertain what he had lost in addition to this profit; and to ascertain that fact it would only be necessary to ascertain what items of expense he was compelled to pay which would have been paid by the business if it had not been interrupted, and then in addition to this if he suffered any special damages or was put to any other expense by way of removing debris and sediment from his premises which he would not have been put to had he been permitted to operate his plant, this should be added to the other items, and the sum of these items would compensate plaintiff for his actual loss. If it be a fact that plaintiff was required to pay wages to his employees, or other expenses when the plant was idle, these facts should be pleaded.

The instruction given on behalf of plaintiff seems to have been grounded upon the theory that plaintiff was entitled to recover the full value of the product which he could have manufactured during the time his plant was idle without taking into account anything that had been saved to him by reason of the fact that his plant was not operated; as for example, the amount of clay he would have consumed, and the amount of fuel which it would have been necessary to consume in burning the tile, and any other expenses that may have been saved to him by reason of the fact that his plant was not operated. This instruction was erroneous.

Defendant asked an instruction which told the jury that if plaintiff could have himself constructed a ditch along his land and thus prevented the water from overflowing his land it was his duty to have done so, and he, for that reason, could not recover. This instruction was properly refused. The rule which makes it the duty of a party injured by the wrong of another to minimize the damages does not apply to this case. "It is the duty of every person or public body to prevent a nuisance and the fact that the person injured could, but does not prevent damages to his property therefrom is no defense either to an action at law or in equity." [Paddock v. Somes, 102 Mo. App. l. c. 226, 238-239, 14 S. W. 746.]

It is also contended that section 1110, Revised Statutes 1899, makes it the duty of defendant to construct ditches along its right of way, and for that reason it was only obeying the mandates of the statute in constructing this ditch. The statute in question has no application whatever to a case of this character. The purpose of that statute is to require the railroad company to construct ditches and drains along each side of its roadbed to connect with ditches, drains or watercourses so as to afford sufficient outlet to drain and carry off the water along such railroad whenever the draining of such water has been obstructed or rendered necessary by the construction of such railroad, in order that the lands of parties adjoining the railroad may not be injured by the obstructions which the construction of the railroad may put in the way of the natural drainage of the water, and it would be a perversion of the statute to say that a company under its protection could accumulate surface water in a body and discharge it upon land adjoining its right of way to the injury of the owner of the land. Its purpose is to require the railroad company to so construct its road and drain it as to prevent injuring the landowner and it cannot be

used as authority by the railroad for inflicting injury upon an adjoining landowner.

For the error noted, the judgment will be reversed and the cause remanded. All concur.