NEAL WILLIAMS, RESPONDENT, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, APPELLANT.*

Springfield Court of Appeals. May 24, 1928.

---

*Corpus Juris-Cyc References: Pleading, 31Cyc, p. 309, n. 33; p. 729, n. 54; Railroads, 33Cyc, p. 369, n. 33; p. 371, n. 58; p. 373, n. 83, 84; Statutes, 36Cyc, p. 1107, n. 36; p. 1111, n. 62; p. 1133, n. 91.

*Ward & Reeves* for appellant.

*Garry H. Yount* and *Francis M. Kinder* for respondent.

BAILEY, J.—Plaintiff sued to recover damages occasioned by an overflow of surface water from a drainage ditch or open storm sewer along the side of defendant's tracks in the city of Poplar Bluff. The petition was in two counts, the first being for negligence in obstructing the ditch and the second was under the statute for failure to provide a sufficient drain. Judgment was for plaintiff on the second count, the trial court sustaining a demurrer as to the first. Defendant has appealed.

By the second count of plaintiff's petition it is alleged that he is the owner of a machine shop located within about seventy-five feet of an open storm sewer maintained by defendant along its right of way in Poplar Bluff; that it was the duty of defendant, owning and operating a railroad in and through Poplar Bluff, to construct at its own expense along the line of its said railroad within the limits of said city, a sewer of sufficient capacity to at all times carry off all surface water that might collect or accumulate along its right of way; that defendant was lawfully bound to construct said sewer in a substantial manner and to cement its sides and bottom so as to give same a hard, smooth surface, and to be of sufficient volume and depth to carry off at all times all surface waters so as to prevent at all times an overflow therefrom. It is further alleged that defendant constructed and maintained an unlawful sewer and negligently failed to perform this statutory duty aforesaid; that by reason of and as a direct result the defendant's failure to construct a lawful sewer along its right of way, during an excessive rain in August, 1926, the water in the unlawful sewer, broke out and away from said sewer and into and through plaintiff's machine shop, thereby flooding said machine shop and damaging plaintiff's tools and machinery. The answer was a general denial. Plaintiff recovered a verdict in the sum of one hundred dollars, which was doubled, as authorized by statute, and judgment rendered accordingly.

Defendant assigns as error the court's action in overruling defendant's objection to the introduction of evidence at the commencement of the trial because the petition is not sufficient in law and fails to set forth facts sufficient to state a cause of action. The rule is that an *ore tenus* demurrer should be looked upon with disfavor by the courts and only sustained when objections are raised which are vital and absolutely fatal to the pleadings. [Lorenz v. Bull Dog Automobile Ins. Co., 277 S. W. 596; Major v. Lumber Company, 260 Mo. 212, 169 S. W. 145.]

Of course if the petition wholly fails to state a cause of action the point may be urged at any stage of the proceedings. It is the latter rule, we assume, defendant would now invoke. It is urged that the petition is fatally defective in that it fails to plead facts showing

that the ditch or sewer described in the petition, and required by the statute, could be connected with any other ditch or watercourse so as to carry the water away or that it was possible to effect the drainage, and thus prevent overflow by the construction of said statutory sewer.

The second count of the petition is bottomed on sections 8784, 8785, 8789 and 8790, Revised Statutes 1919. Section 8784 reads as follows:

"It is hereby made the duty of every person, company or corporation, owning, operating or controlling any railroad or any railroad right of way passing through any incorporated village, town or city within this State, containing a population of thirty thousand inhabitants or less, to construct at their own expense, within the corporate limits of such village, town or city along the lines of their said railroads or railroad right of way, such sewers as shall be of sufficient capacity to at all times carry off all the surface water that may collect or accumulate along their right of way."

Section 8785 prescribes the manner and general specifications for constructing such sewers. Section 8789 establishes liability for damages from overflow caused by failure to construct such sewers. Section 8790 declares sections 8784 and 8785 to be self-enforcing and fixes the extent of liability. It will be noted that section 8784 applies only in certain cities of the State and that it does not provide that such sewer shall be connected with the city sewers or other convenient ditches or drains. It is defendant's contention that some such provision was intended by the Legislature when the foregoing sections of the law were enacted in 1909, and that in reason and fairness such provision should be read into the statute. In support of this theory we are referred to the title of the act itself. The title, found in the Laws of Missouri, 1909, p. 364, is as follows:

"An Act for the purpose of facilitating the building of sewers in incorporated villages, towns and cities within this State having a population of thirty thousand inhabitants or less and fixing the duties of railroad owners, companies and corporations in relation thereto, and providing penalties against them for refusal, failure or neglect to perform such duties, with an emergency clause."

Defendant asserts that the title indicates the Legislature intended to require railroad companies to conform with existing sewer and drainage systems of the cities included in the Act; that it does not contemplate that a railroad company shall construct such sewers unless the construction thereof be suitable and proper to effect drainage and prevent overflow; that since the petition does not allege that the statutory sewer would have prevented the overflow and damage to plaintiff's property or that it could have been connected with any other sewer, drain or watercourse, so as to take the waters away and effect proper drainage, the petition is fatally defective.

Under our Constitution the title to an act is essentially a part of it and is useful in determining the legislative intent. [Strottman v. St. Louis, I. M. & S. R. Co., 211 Mo. 227, 109 S. W. 769; State ex rel. v. Fort, 210 Mo. 512, 109 S. W. 737.] A further canon of construction of statutes is that the courts will not adopt a construction which will make the statute absurd and unreasonable. [Darlington v. Mo. Pac., 216 Mo. 658, 116 S. W. 530; State v. Duckworth, 297 S. W. 150.] It is also a general rule that cognate statutes and the general policy of our law should be considered in construing any ambiguous or loosely framed statute. [Ewing v. Vernon Co., 216 Mo. 681, l. c. 692, 116 S. W. 518.]

In the light of these well-recognized canons of construction it seems clear the Legislature never intended by section 8784, Revised Statutes 1919, to provide that the mere failure of a railroad company to construct a statutory sewer, as therein provided, rendered it liable for damages for overflow without regard to the effectiveness of such sewer for that purpose. The title to the act clearly indicates the provision was enacted in order to facilitate the building of sewer systems in certain cities and to compel railroad companies to co-operate in such necessary enterprises. This construction is strengthened by the fact that the Act also specifies the duty of railroad companies where district sewers cross beneath their tracks. [Sec. 8787.] It would be absurd and unreasonable to hold that the Legislature intended that a railroad company should construct a statutory sewer along its right of way if such sewer had no outlet or could not connect with some other convenient or accessible sewer, ditch or drain, which would permit surface water caught in the statutory sewer to escape. Such construction would place a heavy burden on railroads and compel them, in some instances at least, to do or attempt to do an impossible thing or, failing in that, to suffer the consequences. Moreover, section 8789 makes railroad companies liable for damages to property overflowed only "by reason of such failure" to construct the statutory drain. When all the various cognate provisions of the Act of 1909 under consideration are construed together, it is clear that before a party whose property has been injured by overflow is entitled to damages therefor against a railroad he must prove the overflow was caused by a failure on the part of the railroad company to construct a statutory sewer. In making such proof, a prima-facie case would not be made by simply proving the statutory sewer was not constructed, that the water overflowed from an unlawful ditch or sewer and that plaintiff was thereby damaged. The proof must go further and plaintiff should produce substantial evidence tending to show that if such statutory sewer had been constructed the overflow would not have occurred. Necessarily, in making such proof, plaintiff must show the sewer had or could have had an outlet either though city sewers or through existing sewers or drains across

private property. Of course the railroad company would have no authority to turn water onto or construct sewers across private property. [Grimes v. Railway Co., 184 Mo. App. 117, 168 S. W. 317; Heisserer v. Missouri Pac., 294 S. W. 132.]

It does not follow, however, that failure of the petition to contain an allegation that the railroad company could have connected the statutory sewer, if constructed, to any other sewer or watercourse, is fatal to plaintiff's cause of action, when the point is first raised by demurrer *ore tenus*.

The petition in this case does allege in substance that by reason of the failure of defendant to construct such statutory sewer, the overflow and damage resulted. Pleading conclusions will withstand the assault of a demurrer *ore tenus*. [State ex inf. Major v. Arkansas Lumber Co., 260 Mo. 212, 169 S. W. 145.] Defendant relies on the case of Grimes v. Railroad, 184, Mo. App. 117, to support the theory that the petition is fatally defective. In the Grimes case the St. Louis Court of Appeals was construing what is now section 9953, Revised Statutes 1919. That section applies to the railroad tracks without, as well as within, cities and makes it the duty of railroad companies to construct suitable ditches along each side of its roadbed "to connect with ditches, drains or watercourses." In that respect it differs from section 8784, supra, which contains no such provision. In construing section 9953, the Court of Appeals in the Grimes case held that "where the breach assigned is the failure to construct and maintain lateral ditches along the sides of the railroad, the petition must aver and the instructions require the jury to find, as a predicate of liability, that there is a ditch or watercourse with which such lateral ditches may be connected so as to afford an outlet for water." [l. c. 123.] The court, however, was not considering the question of a demurrer *ore tenus*. We consider the Grimes case an authority in this case only to the extent that it clearly sets forth the unreasonableness of a strict construction of the statute under review. We, therefore, hold the trial court committed no reversible error in failing to sustain defendant's objections to the petition, but that plaintiff was nevertheless required to produce substantial evidence tending to prove that the statutory sewer could have been connected with some sewer, ditch or drain so as to afford an outlet for such surface water which might flow into said statutory sewer. If such proof had been offered and that issue properly submitted to the jury, the petition would be sufficient after verdict.

This leads us to the second assignment in which error is charged in the failure of the trial court to give an instruction in the nature of a demurrer to the evidence offered at the close of the whole case. A detailed statement of the evidence and physical facts seems unnecessary. It is sufficient to state that defendant's railroad passes north and south through the business section of the city of Poplar

Bluff and proceeds along Depot street; that defendant constructed a ditch along the east side of its roadbed, but not one which would comply with the statutory provisions; that the railroad at this point lies in a sort of valley and water from a number of paved streets, in time of rain, drains into the open ditch, aforesaid; and that plaintiff's machine shop is located about seventy-five feet east of this ditch. It further appears that in times of high water the ditch was inadequate to carry off the water draining into it and of course overflowed. It was on one of these occasions, in August, 1926, that plaintiff's shop was flooded and he sustained the damage complained of. Plaintiff offered no evidence tending to prove a statutory sewer would have an outlet at or near the point where the unlawful ditch left defendant's property sufficient to take care of the waters which might accumulate in said sewer. Defendant offered substantial and uncontradicted evidence tending to prove the outlet was no larger than the unlawful ditch which it had constructed and maintained along its right of way in said city. Hence a statutory ditch or sewer would not have avoided the injury. Under the view we have taken of section 8784, it seems clear the demurrer to the evidence should have been sustained.

Error is also alleged in the failure of the trial court to give an instruction offered by defendant submitting the issue that if the ditch as constructed was sufficient to carry water that could be carried in the lower part of said ditch after it passed defendant's property line, then plaintiff could not recover. This theory of the case was correct and should have been submitted. The judgment is reversed and the cause remanded.

*Cox, P. J.*, and *Bradley, J.*, concur.